DOMENGEAUX, Judge.
Plaintiff, Port Arthur Towing Company, alleging to have acquired the rights of the lessee emanating from a land lease dated October 19, 1953 affecting 20 unimproved acres in Calcasieu Parish, filed suit against the lessors and their successors for specific performance of the alleged obligation of the lessors to sell the leased premises to the plaintiff under a purchase option contained in the original land lease. The defendants are the members of the Leveque family as lessors. Maison, Inc., Landtex, Inc., Pauley Agency, Inc., and Owens-Illinois, Inc. The lease agreement was executed on October 19, 1953 by Stanford L. Walters and Mrs. Mary P. Leveque as lessors, and Calcasieu Shipbuilding Corporation as lessee, and recorded in the Conveyance Records of Cal-casieu Parish on October 29, 1953. The portions of the lease which gave rise to this litigation are summarized as follows:
(1) The primary term of the lease was 10 years from October 19, 1953. The lessee was granted the option to renew the lease for five (5) additional periods of ten (10) years each under the same terms and conditions and for the same rent as agreed to for the primary term.
(2) The rent was $2,400.00 per year payable annually in advance. In addition, it was stipulated that if the lessee should sublease the property for an amount in excess of $2,400.00 per year, then the lessors were to receive one-half of this excess.
(3)The option provision here in dispute provided: * * * Lessor agrees that if Lessor decides during the initial term of this lease, or any renewal thereof, to sell the subject land, and a ligiti-mate offer has been received therefor from some financially responsible third party or parties, the Lessor shall give Lessee written notice of the name of said proposed purchaser and the consideration and terms of said offer and Lessee is hereby given an option to buy said land for said consideration and on the terms of said offer at any time within thirty days from receipt of said written notice * * * »
Calcasieu Shipbuilding Corporation was ultimately adjudged a bankrupt and as a result thereof, the lease was assigned by the Trustee in bankruptcy to Calship, Inc., on October 15, 1958. This assignment was recorded December 18, 1958. Calship, Inc. was likewise subsequently adjudged a bankrupt and the bankruptcy Trustee executed an instrument which, in effect, transferred fee title to the premises in question to the plaintiff Port Arthur Towing Company. This occurred April 22, 1963, however the instrument was not recorded until October 31, 1966. (The purported fee title instrument by the bankruptcy Trustee to Port Arthur Towing Company was corrected to reflect a transfer of the lease, rather than fee title to the leased premises on February 12, 1968 but the corrected deed was not recorded until November 7, 1969.) In November of 1963, John Stewart, an attorney representing a corporation known as Frede-man’s Calcasieu Locks Shipyard, Inc. obtained the signature of Mrs. Mary Leveque, one of the original lessors, to an instrument which consented to the substitution of Fredeman’s Calcasieu Locks Shipyard, Inc. as the lessee of the original lease which *597 consent agreement contained the following paragraph:
“That appearer does hereby agree and consent to the substitution of Fredeman’s Calcasieu Locks Shipyard, Inc., as lessee, in place of said Calcasieu Shipbuilding Corporation, said substituted lessee to be subject to all of the original terms and conditions of said above described lease.”
Mrs. Leveque executed this instrument on November 4, 1963 and it was subsequently recorded on November 12, 1963. On January 1, 1964 Fredeman’s Calcasieu Locks Shipyards leased the property to Port Arthur Towing Company for a term of five years and provided for a monthly rental of $1,000.00. This lease was not recorded until October 31, 1966, two years and 10 months after its execution.
On November 19, 1964, Stanford L. Vincent, a real estate agent for the Leveques, wrote a letter to Fredeman’s Calcasieu Locks Shipyard, Inc. in care of John Stewart, the attorney who had obtained the consent to substitute Fredeman’s Calcasieu Locks Shipyard, Inc. in place of the original lessee as set out above. This letter provided as follows:
“November 19, 1964
“Fredeman’s Calcasieu Ship Yard, Inc. c/o Mr. John R. Stewart, Attorney and Agent for Service of Process Lake Charles, Louisiana
Gentlemen:
I am acting as agent for the Leveque heirs, owners of the property described in the lease granted to Calcasieu Ship Building Corporation, recorded in the records of Calcasieu Parish in Conveyance Book 548, page 135.
Maison, Inc., a Louisiana corporation has tendered an option to purchase the property from the Leveque heirs on the following terms:
1. The term of the option would be 13 months and the cost of the option, $500.00 and other valuable considerations.
2. The purchase price would be $100,-000 cash.
The Leveque heirs consider Maison, Inc. to be a financially responsible third party in the contemplation of the lease and hereby give you the written notice provided in said lease. Should you wish to exercise your option, under the lease to buy this land, on these same terms and conditions, such arrangements must be completed within 30 days from this date.
If you know now that you will not exercise your option, it would be most helpful if you could give us written notice to this effect at the earliest date, since it will facilitate our other negotiations for the sale.
With kindest personal regards, I am,
Yours very truly,
/s/ Stanford L. Vincent
STANFORD L. VINCENT, Agent
for lessors, Leveque Heirs”
This letter was immediately forwarded to Mr. Fredeman.
It was not until October 9, 1965 that a reply to this letter was made by Port Arthur Towing Company through Mr. Fredeman as its officer. This letter provided as follows:
“PORT ARTHUR TOWING COMPANY
“Barging Chemicals Throughout the Inland Waterways
YUkon 2-6476 Day or Night—
P. O. Drawer 1409
PORT ARTHUR, TEXAS
October 9, 1965
“Standord L. Vincent,
Insurance & Real Estate,
832 Ryan Street,
Lake Charles, La.
*598 Dear Stanford:
Please be advised that Port Arthur Towing Company, Inc., holds a lease on 20 acres of the land of the LeVeque heirs in which you or your clients have option rights. Said lease provides in part that if a bonafide offer of purchase is received by the owners during the term of said lease, Port Arthur Towing Company, Inc. shall have a 30 day period after written notice in which to match the offer and purchase the land. This corporation takes the position that the written notice give[n] to Fredemans Cal-casieu Locks Shipyard, Inc., was insufficient under the terms of said lease to cancel any rights of Port Arthur Towing Company, Inc.; that the offer of the option was not an offer of purchase, and that in any event said offer was not a bonafide offer intended by and governed by the terms of said lease.
Yours very truly,
PORT ARTHUR TOWING COMPANY
/s/ W. F. Fredeman
TH/WFF”
Further correspondence ensued in 1966 between Stanford L. Vincent and Mr. Fredeman, whose correspondence reflects that he was writing on behalf of Port Arthur Towing Company and Fredeman’s Calcasieu Locks Shipyard, Inc. The option to purchase the subject property was granted by the Leveques on December 17, 1964 and subsequent thereto the subject property was assigned several times through defendants Landtex, Inc. and Pau-ley, finally resulting in the sale by Pauley, of its rights under the option, already accepted, to Owens-Illinois, Inc. on December 23, 1965 and recorded in the public records of Calcasieu Parish on February 15, 1966. This was some 10 months before the rec-ordation of the instrument purporting to convey fee title to the 20 acre tract from Calship, Inc. through the bankruptcy Trustee to plaintiff and almost two years prior to the corrected instrument from Calship, Inc. to plaintiff. On March 1, 1966 the Leveque heirs sold the leased premises to Landtex, Inc. which had purchased the option to buy the land from the orginal op-tionee, Maison, Inc. Thereafter on March 2, 1966 Landtex, Inc. sold the 20 acre tract for $100,000.00 subject to the 1953 lease, to Owens-Illinois, Inc. Both of these deeds were recorded in the Conveyance Records of Calcasieu Parish on March 7, 1966.
Plaintiff filed suit on November 2, 1966 for specific performance and seeking to set the various sales aside alleging fraud and other grounds, and including the right to purchase the property, not for the $100,-000.00 that was included in the option but for “the fair market value (and/or 'legitimate’ value) thereof, to he determined by this Honorable Court”. Plaintiff, as a result of a motion to strike, agreed to delete the fraudulent allegations by amendment.
Defendants filed exceptions of no right and no cause of action and pleas of prescription and laches.
The trial judge sustained the exception of no right of action and dismissed plaintiff’s suit on the grounds that plaintiff, under the option portion of the lease agreement, was duly afforded the opportunity to exercise its right of taking the option, and in failing to do so, forfeited its rights under the lease agreement.
Plaintiff has appealed herein alleging numerous errors on the part of the trial judge.
Plaintiff appellant contends that the trial court erred in maintaining defendants’ exception of no right of action on the ground that plaintiff had forfeited its rights under the written lease agreement, and in holding that it Was timely afforded the opportunity to exercise its option rights and in failing to do so, forfeited its rights under the lease option.
*599 We conclude that the trial court was correct in maintaining defendants’ exception of no right of action.
In Clostio’s Heirs v. Sinclair Refining Co., et al., La.App., 36 So.2d 283, the Court in discussing the exception of no right of action, said:
“It has been repeatedly held that where the trial and final disposition of an exception will put an end to a case, it should be disposed of before going into a trial on the merits so as to eliminate a protracted and unnecessary trial.
⅝ ⅜ ⅝ ⅜ :jc ⅜
“It is likewise clear that on the trial of an Exception of No Right of Action, the exceptor has the right to offer evidence for the purpose of showing that the plaintiff does not possess the right to make a claim or that the right itself does not exist.” (Emphasis added.)
This is a suit for specific performance, an equitable remedy to which plaintiff is not entitled as a matter of right and which is left to the sound discretion of the court. Hymel v. Old Homestead, Inc., La.App., 135 So.2d 685. Our courts have always been reluctant to enforce specific performance except under strong circumstances, and as the Louisiana Supreme Court said in Joffrion, et al, v. Gumbel, 123 La. 391, 48 So. 1007:
“It is a well recognized rule that:
‘A bill for specific performance is addressed in the extraordinary jurisdiction of a Court of equity to be exercised according to its discretion * * * The general rule is that he who seeks performance of a contract for the conveyance of land must show himself ready, desirous, prompt, and eager to perform the contract on his part. Therefore, unreasonable delay in doing these acts which are to be done by him will justify and require a denial of relief. No rule respecting the length of delay which will be fatal to relief can be laid down, for each case must depend on its peculiar circumstances * * * ” (Emphasis added).
⅜ ⅝ ⅜ ⅜ ⅜ ‡
“ ‘It is equally well settled that one who seeks specific performance of such a contract must institute his suit within a reasonable time, and before any material change affecting the interest of the parties has taken place.’ ” (Emphasis added.)
The contention by plaintiff that notice was not given is without merit. Mr. Fredeman, his wife and son, owned both the Port Arthur Towing Company and Fredeman’s Calcasieu Locks Shipyard, Inc. and Mr. Fredeman was president of both companies. The notice was given to Frede-man’s Calcasieu Locks Shipyard, Inc. which was the last known owner of the lease insofar as the Leveque heirs were concerned. Even though the notice was addressed to Fredeman’s Calcasieu Locks Shipyard, Inc., it was received by Mr. Fredeman. The letter referred to was notice of the intention to grant an option to purchase the property to a third party for a consideration of $100,000.00. This was not acted upon by Mr. Fredeman as an officer of the two corporations, but on the contrary, he took the position that it was not a “legitimate offer” and his communication of approximately one year later clearly reflects this and this position he maintained until November of 1969. It was not until November 7, 1969, approximately three years after the filing of the petition that the plaintiff changed its position and decided that it was willing to pay the $100,000.00 for the subject property and thus amended his position to that effect. Obviously in seeking the performance of his alleged contract plaintiff was not ready, desirous, prompt and eager to perform the contract after notice was given of the option in favor of Maison, Inc.
The trial judge in a well reasoned opinion, stated:
“ * * * Mr. Fredeman was notified that the owners intended to grant an op *600 tion. This was the first step toward the possible consummation of a sale of the property. An option when granted for a consideration is an offer, the acceptance of which consummates an enforceable contract. Mr. Fredeman was timely afforded the opportunity, under the terms of the option portion of the lease agreement, to exercise his rights by taking the option. This he failed to do and did not offer to do for a period of three years. He thereby forfeited his rights under the lease agreement. Under these circumstances this Court feels that the exceptions of no right of action filed by all defendants herein must be sustained * * * >’
Actually plaintiff had no title of record to the lease in question until February 12, 1968 which was almost two years after the land had been sold to defendants Landtex, Inc. and Owens-Illinois, Inc. Further, on October 31, 1966 when it recorded its deed of April 22, 1963 from the bankruptcy Trustee, it still had no title to the lease, but rather appeared in the records to be the owner of the land itself and in the interim between its alleged acquisition of the lease on April 22, 1963, its recordation of October 31, 1966 and its correction of February 12, 1968, plaintiff had solicited and obtained the consent of the lessor Mrs. Leveque to the substitution of Fredeman’s Calcasieu Locks Shipyard, Inc. as lessee, subject to all of the original terms and conditions of the lease. This substitution was recorded November 12, 1963, and thus, as has previously been stated, on the date that lessor gave notice pursuant to the lease, Fredeman’s Calcasieu Locks Shipyard, Inc. was the only known lessee.
In view of the pleadings and evidence and the chronology of events it is evident that the plaintiff forfeited any rights that it may have had under the lease agreement to purchase the subject property.
In the case of Price v. Town of Ruston, 19 La.App. 356, 139 So. 55, the Court, in discussing the nature of an option to purchase real estate, said:
“ ‘An option has been held to be an unaccepted offer. It states the terms and conditions on which the owner is willing to sell or lease his land, if the holder elects to accept them within the time limit. If the holder does so elect, he must give notice to the other party, and the accepted offer thereon becomes a valid and binding contract.’ ” (Emphasis added.)
Further, on the subject of options, it was said in McVay v. Swift, 5 Cir., 91 F.2d 208:
“ * * * an option may not be enforced until it has become a contract by an election to exercise it made in the way and manner the law prescribes.” (Emphasis added).
Appellant complains that the trial judge only perfunctorily reviewed the evidence introduced at the trial of this exception before maintaining defendants’ Exceptions of No Right of Action. Further, plaintiff interprets the Trial Court’s decision to be based on “extinguishment” of defendants’ obligation to offer the land to plaintiff under the option provision of the lease, in an attempt to bring the present case under the rule of Bielkiewicz v. Rudisill, 201 So.2d 136, decided by this Court in 1967.
First of all, it is obvious from the trial court’s written reasons that the decision in this case was reached only after a careful and thorough review of the large volumes of evidence introduced by plaintiff and defendants, and after considering the written briefs submitted by the parties. Secondly, the trial court’s statement that plaintiff “forfeited his rights under the lease agreement” does not, as plaintiff contends, indicate that the trial court was of the opinion that the defendants’ obligation to first offer and sell the leased land to plaintiff was '“extinguished.”
In Bielkiewicz, the defendant filed an “Exception of No Cause or Right of Action and Plea of Res Judicata” based upon form “releases” signed by plaintiffs which defendant claimed constituted a compromise *601 or voluntary remission which extinguished or barred suit upon the plaintiff’s claim. The present case does not involve this situation or any situation similar or analogous thereto. Article 1005 of the Louisiana Code of Civil Procedure provides that “Ex-tinguishment of the obligation in any manner” is a matter of affirmative defense and shall be affirmatively pleaded. The Official Revision Comments under that article, in paragraph (b), define this defense as follows:
“ 'extinguishment of the obligation in any manner’ covers payment and release specified by the federal rule as well as all of the modes of extinguishing obligations provided in Art. 2130, Civil Code, except prescription.” (Emphasis added.)
Article 2130 of the Civil Code provides:
“Obligations are extinguished:
“By payment.
“By novation.
“By voluntary remission.
“By compensation.
“By confusion.
“By the loss of the thing.
“By nullity or rescission.
“By the effect of the dissolving condition, which has been explained in the preceding chapter.
“By prescription, which shall be treated of in a subsequent title.”
As can be seen by the above enumeration, the phrase “extinguishment of the obligation in any manner” cannot and does not have any application whatsoever to the facts of this case. Payment, novation, voluntary remission, compensation, confusion, loss of the thing, nullity or rescission and prescription are so obviously inappropriate as to require no discussion. The remaining method by which obligations are extinguished, i. e. “by the effect of the resolu-tory condition”, also does not apply, as shown by the case of Zemurray v. Boe, 235 La. 623, 105 So.2d 243, which held that the vendee’s timely acceptance of an option to buy real property is a suspensive rather than a resolutory condition and that the Vendor’s obligations to sell the real property to the vendee does not come into existence until the option is timely accepted by the vendee. The Louisiana Supreme Court said (105 So.2d at page 249-250):
“Under the option agreement between the parties, the obligation of (vendor) here sought to be enforced — his alleged obligation to sell (Vendee) the land in question for the stated consideration — only came into existence if certain things were done, including that: (1) notice be given in writing to (Vendor) of the acceptance of the option by 5:00 P. M., May 9, 1954 * * * The occurrence of these conditions was necessary to initiate (Vendor’s) obligation to sell the land; they were conditions suspensive of the obligation of (Vendor) to sell the land upon (Ven-dee’s) acceptance by May 9, 1954. Rather than terminating any such obligation, (Vendee’s) failure to (comply with the option) prevented its coming into existence.”
(Emphasis added.)
Thus we see that the basis for the trial court’s decision in the instant case was not that plaintiff’s right to specific enforcement of defendants’ “obligation” to sell the land to plaintiff was forfeited because defendants’ “obligation” was “extinguished”, (as plaintiff suggests) but rather, that because of plaintiff’s failure to timely exercise the option, defendants’ “obligation” never came into existence and, therefore, the rights which plaintiff is seeking to enforce do not exist, and a trial of this case would be unnecessary. (See Clostio’s Heirs v. Sinclair Refining Co., et al, quoted supra)
*602 In view of our conclusions we find it unnecessary to consider the exceptions of No Cause of Action and pleas of prescription and laches which are pleaded by the defendants in the alternative.
For the foregoing reasons the judgment of the trial court is affirmed at appellants’ costs in both courts.
Affirmed.