**PORT ARTHUR TOWING COMPANY,**
Plaintiff-Appellee,

v.

**OWENS–ILLINOIS, INC., Defendant-**
**Appellant.**

No. 73–1870.

United States Court of Appeals,
Fifth Circuit.

April 12, 1974.

William E. Shaddock, Oliver P. Stockwell, Lake Charles, La., for defendant-appellant.

Everett R. Scott, Jr., Lake Charles, La., for plaintiff-appellee.

Before COLEMAN, AINSWORTH and GEE, Circuit Judges.

AINSWORTH, Circuit Judge:

In this case a declaratory judgment is sought by Port Arthur Towing Company [PATCO], the lessee-assignee and successor to the original lessee of a tract of land in Calcasieu Parish, Louisiana, against Owens-Illinois, Inc. [Owens], lessor-vendee and successor in title to the original lessors. PATCO asked the court to declare that the lease was in full force and effect. Owens filed a counterclaim for rent allegedly due by plaintiff. The district judge held that PATCO was the owner of all rights emanating from the original lease agreement of October 19, 1953, and declared the lease to be valid and binding. The judgment denied Owens' counterclaim for rent.

Owens contends on appeal that the lower court erred (1) in reversing a finding of an ultimate fact previously determined by valid and final judgment in the Louisiana state courts between the same parties, and (2) in failing to find that plaintiff owed additional rent of $24,000 for a five-year sublease, the nonpayment thereof having thus terminated the lease.

We find no error in the findings or conclusions of the district court and consequently affirm.

On October 19, 1953, Stanford L. Walters and Mary P. Leveque leased to Calcasieu Ship Building Corporation a tract of land containing 20 acres situated in Calcasieu Parish, Louisiana, for the consideration of an annual rental of $2,400. The lease was timely recorded in the Conveyance Records of Calcasieu Parish. The original agreement contained certain provisions which have become the subject of controversy between Owens, the present lessor-landowner, and PATCO, lessee, resulting in a suit in a Louisiana state court and finally the present suit in federal court. The pertinent provisions of the lease follow:

This lease shall be for a total term of ten years from the date hereof and for a valuable consideration hereby acknowledged to have been received the Lessor hereby grants to Lessee the option to renew this lease for five additional periods of ten years each beginning at the expiration of the first total term of ten years under the same terms and conditions and for the same rent as agreed to herein for the first ten years, provided Lessee shall give to Lessor written notice at least thirty days prior to the expiration of each ten-year period of its decision to exercise its said option to renew this lease for each additional ten-year period. . . .

The rent to be paid by Lessee to Lessor is the sum of $2,400.00 per year . . . . .

If Lessor decides during the initial terms of this lease, or any renewal thereof, to sell the subject land, and a legitimate offer has been received therefor from some financially responsible third party or parties, the Lessor shall give Lessee written notice of the name of said proposed purchaser and the consideration and terms of said offer and Lessee is hereby given an option to buy said land for said consideration and on the terms of said of-

fer at any time within thirty days from receipt of said written notice.

. . .

Lessee is specifically granted the right to sublet or sublease or assign the lease and any and all rights hereby granted in whole or in part. In the event, however, that Lessee sublets or subleases the subject property, or any part thereof, for more than $2,400.00 per year, then Lessor will receive one-half of any said amount or amounts over $2,400.00.

This lease specifically, but not by way of limitation, shall be binding upon any person or persons, actual, fictitious, and/or legal entities who may succeed to or acquire any of the rights or liabilities of the parties hereto.

The lease further gave lessee the right to construct shipyard facilities on the property and at the expiration of the lease to remove all such improvements from the land, which was acknowledged by lessor to be vacant.

Upon acquiring the lease, the original lessee constructed a shipyard facility on the land as contemplated by the contract. Approximately ten years later, on April 22, 1963, the lease, having passed through the hands of several transferees, was acquired by plaintiff PATCO,[1] and on August 20, 1963, PATCO renewed the lease for a ten-year term. Shortly thereafter, on January 1, 1964, PATCO subleased the land and improvements thereon to its sister corporation, Fredeman's Calcasieu Lock Shipyard, Inc. [Fredeman's] for a five-year term at a monthly rental of $1,000.

On November 19, 1964, the Leveque heirs, lessors of the leased property, notified the sublessee Fredeman's that an option to purchase the property for $100,000 cash had been received from a named financially responsible third party, and accordingly were thereby giving written notice so that lessee might exercise its option within thirty days to buy the land if it so desired. On the same day W. F. Fredeman, president of both PATCO and Fredeman's, who with his family owned all the stock in both corporations, replied that Fredeman's was not interested in exercising the option and was therefore waiving that right. Under the terms of the lease PATCO as lessee, and not sublessee Fredeman's, was entitled to such notice. No reply was made by PATCO until October 9, 1965, when W. F. Fredeman replied on behalf of that corporation. The letter in effect challenged the written notice given to Fredeman's as insufficient under the terms of the lease to cancel any rights of PATCO. In the interim, however, lessors had granted the option to the party named in its letter of November 19 to purchase the property. Title to the property was conveyed to defendant Owens on March 2, 1966. The instrument transferring title to Owens recited that the property was affected by the 1953 lease and that the sale was made contingent upon vendee assuming the obligations of lessor under the original lease. Subsequently Owens informed Fredeman's that future rentals were payable to it. Thereafter, on October 14, 1966, PATCO tendered a check for rent in the sum of $2,400 to defendant. The check, however, contained restrictive terms stating that "payment is made with full reservation of rights of Port Arthur Towing Company to set aside and have sold to it the property described in the lease dated October 19, 1953 owned by Port Arthur Towing Company." Owens returned the check

1. The written instrument erroneously referred to a transfer of the "fee title" to the premises. This was not corrected until February 12, 1968 to reflect a transfer of the lease rather than the land. There is no suggestion, however, that PATCO was misled by what was apparently an inadvertent error. PATCO obviously considered itself the lessee as on August 20, 1963, four months after the transfer, PATCO notified the lessor, who was then Mary P. Leveque, that it was exercising its option to renew the lease for an additional ten years.

on October 27, 1966 and informed PATCO that it was in default.[2]

On November 2, 1966, PATCO filed suit in the Fourteenth Judicial District Court of Louisiana, which suit as amended sought judgment "decreeing specific performance of those option and first refusal rights stipulated in such lease agreement [the original agreement of October 19, 1953]." Defendants filed exceptions of no right and no cause of action and pleas of prescription and laches. The exception of no right of action was sustained by the state trial judge which was affirmed on appeal: Port Arthur Towing Company v. Leveque, La.App., 3 Cir., 1971, 247 So.2d 595. PATCO later filed the present suit seeking a declaratory judgment "declaring that the contract of lease [the original agreement] is now in full force and effect and binding upon Owen-Illinois, Inc., as Lessor-vendee of and successor in title to the original lessors, and Port Arthur Towing Company, as Lessee-assignee of and successor to the original lease in all respects as originally written [except that the paragraph relating to the option to purchase is of no force and effect as to the acquisition by Owen-Illinois, Inc.]." Judgment was rendered for PATCO from which Owens appeals.

Appellant contends that the lease terminated either on November 2, 1966, when PATCO filed the state court suit allegedly attacking the title of Owens, or on October 19, 1966, the anniversary date of the lease, for failure of PATCO to pay the full rent.

It is conceded by appellant that the basic facts, consisting almost exclusively of deeds, letters and other documentary materials, are not in dispute. Appellant contends that PATCO, having been unsuccessful in Louisiana state court, has now filed this action in federal court in an attempt to retry the factual issues already adjudicated in the state court action, but is prevented from doing so under the doctrine of collateral estoppel.[3] Appellant argues that the ultimate fact found by the state court was that plaintiff was seeking not to exercise its option, but to set aside the sale to Owens and its predecessors in title.[4] Appellant further contends that PATCO's state court suit constituted a denial of its landlord's title, thereby severing the relationship between lessor and lessee under the holding by the Louisiana Supreme Court in Thayer v. Waples, 26 La.Ann. 502 (1874).[5] Thus, says appellant, the federal district judge's finding that PATCO's state suit sought only to

2. The same check was re-tendered by letter to Owens on November 8, 1966. Owens again returned the tender on November 11, 1966, taking the position the lessee was in default, that Owens was exercising its right under the lease to declare due and exigible all future unpaid installments, and its intention to seek a dissolution of the lease. On December 13, 1966, PATCO deposited the sum of $16,800, representing the accelerated rent due, with a depository bank and so notified Owens. On December 20, 1966, Owens informed PATCO that it was not accepting the deposit and considered the lease terminated.

3. Rule 8(c), Fed.R.Civ.P., requires that the defense of estoppel be affirmatively set forth in the pleadings. Appellant Owens failed to so plead, and the issue was not raised in the district court.

4. By amendment to its petition in the state trial court, PATCO deleted certain allegations of fraud by which it sought to set the various sales aside, leaving as the remaining issue the question of whether or not plaintiff was

entitled to specific performance because of the option-to-purchase clause in the agreement. This issue was decided against plaintiff on defendant's exceptions of no right of action. It was the only issue decided by the state court. See Port Arthur Towing Company v. Leveque, La.App., 3 Cir.1971, 247 So.2d 595 at 598 and 602.

5. The federal district judge accepted the general principle of *Thayer*, that the denial by a tenant of the title of his landlord, severs the relationship between them, but properly distinguished the case on its facts. Thayer was evicted by his landlord for failure to pay rent. He sued for wrongful eviction contending that Waples was not the owner of the property and therefore no rent was due him, thus repudiating the lease contract between them. In the instant case, PATCO continued to make attempted rental payments while litigating the matter in the state court. We agree that such action was not a repudiation of the lease but, to the contrary, an affirmation thereof. As the court below said in assessing plain-

exercise an option to purchase the leased property improperly reversed the ultimate fact found by the state court.

We disagree with this interpretation of the state court's findings. A reading of the decision by the Louisiana appellate court refutes appellant's contention that PATCO filed its suit not to exercise its option to purchase but to set aside the sale by lessors to Owens. The opening sentence of the Louisiana state court opinion characterizes the suit as a "suit against the lessors and their successors for specific performance of the alleged obligation of the lessors to sell the leased premises to the plaintiff under a purchase option contained in the original land lease." Port Arthur Towing Company v. Leveque, La.App., 3 Cir., 1971, 247 So.2d 595, 596. Following a detailed statement of facts, and as a preface to its legal analysis of the nature and effects of a bill for specific performance, the court again states, "This is a suit for specific performance." 247 So.2d at 599. Again, the court makes it clear that the rights relinquished by PATCO are the rights to exercise the option to purchase: "In view of the pleadings and evidence and the chronology of events it is evident that the plaintiff forfeited any rights that it may have had under the lease agreement to purchase the subject property." 247 So.2d 600.

■ We agree with the federal district judge below that plaintiff in its prior state action sought only to exercise an option to purchase the leased property, and that this cannot be construed as a denial of the validity of the lease or of the landlord's title. Thayer v. Waples, *supra,* is inapposite. Likewise, under the circumstances present here, collateral estoppel is inapplicable.[6] The only issue determined by the state court proceedings was that plaintiff asserted no right of action to compel specific performance under the option clause. The issue decided here by the district judge is a new one, not previously litigated, that is, that the original lease remains valid and binding between Owens and PATCO. For the foregoing reasons we find that decision to be correct.

■ Appellant's second contention that the lease was dissolved because of PATCO's failure to pay rent as required by the contract is based on two clauses in the lease agreement. The first provides for an annual rental of $2,400, and the second grants lessee the right to sublease but requires that "In the event, however, that Lessee sublets or subleases the subject property, or any part thereof, for more than $2,400.00 per year, then Lessor will receive one-half of any said amount or amounts over $2,400.00." Appellant also asserts in its counterclaim that the amount due it as a result of appellant's sublease to Fredeman's at an annual rental of $12,000, is an additional $4,800 per year for the term of the sublease. The evidence shows that the improvements to the property, consisting of a valuable shipyard facility, were made by the original lessee and were the property of the lessee. When the sublease for $1,000 a month between PATCO and Fredeman's was executed, the Board of Directors of the two sister corporations apportioned $200 to land

---

tiff's contentions in the state court, what PATCO was saying was: "You own this property; I have an option to purchase it on my recorded lease; I want the court to order you to recognize my rights and sell it to me."

6. Collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Ashe v. Swenson, 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). *See also* James

Talcott, Inc. v. Allahabad Bank, Ltd., 5 Cir., 1971, 444 F.2d 451, 458–459, in which we listed three traditional requirements for the application of the doctrine of collateral estoppel, none of which is present here: "(1) [T]he issue to be concluded must be identical to that involved in the prior action; (2) in the prior action the issue must have been 'actually litigated'; and (3) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment."

and $800 to equipment. Appellant implies that this allocation by sister corporations, with identical members on their respective boards, was in effect a convenient method of avoiding paying additional rent required by the contract. There was evidence, however, to show that the apportionment of land rent and equipment was proper and reasonable. We cannot say the court was clearly erroneous in so concluding.

Affirmed.