[Civ. No. 31718. First Dist., Div. One. Jan. 3, 1974.]

JOSEPHINE BELMONT et al., Plaintiffs and Appellants, v.
STATE PERSONNEL BOARD, Defendant and Respondent;
DEPARTMENT OF SOCIAL WELFARE et al.,
Real Parties in Interest and Respondents.

## Counsel

Charles C. Marson and Peter E. Sheehan for Plaintiffs and Appellants.

Evelle J. Younger, Attorney General, and Charlton G. Holland, Deputy Attorney General, for Real Parties in Interest and Respondents and for Defendant and Respondent.

OPINION

ELKINGTON, J.—Appellants Josephine Belmont and Glenda Pawsey were civil service "psychiatric social workers" employed by the state's Department of Social Welfare (hereafter the "Department"). They worked with mentally and emotionally disturbed persons who in one form or another were receiving aid or assistance under division 9 (§§ 10000-18909, inclusive, entitled "Public Social Services") of the Welfare and Institutions Code.

Prior to 1969 the Department's information and records concerning these welfare recipients were kept in a somewhat random fashion; some appear to have been recorded at various places in the Department's books and records, while some seem to have existed only in the minds and memories or personal memoranda of the psychiatric social workers employed by the Department.

In 1969 the Legislature adopted the "Intergovernmental Welfare Management and Information Systems Act." It was codified as sections 11025-11035, inclusive, of the Welfare and Institutions Code. Its purpose was the development of a welfare management information system to be integrated with county and state welfare agencies and with the federal Department of Health, Education, and Welfare. (§ 11028.) The act called upon the Department "to simplify and reduce the cost of welfare administration by developing efficient, highly automated processes for determining eligibility and making aid payments. . . ." (§ 11026.) These automated processes were required to make "maximum use of *electronic data processing*" thereby, among other things, to "Eliminate unnecessary functions and forms and consolidate redundant information," "Permit the most efficient collection, storage and retrieval of information," and "Eliminate all possible causes of error made in the eligibility determination and aid payment process." (Italics added; § 11027.)

Some months before the effective date of the act, and apparently to speedily and efficiently give effect to its provisions, the Department called upon its psychiatric social workers to furnish written information concerning each of the welfare recipients of their respective case loads. This information, as indicated, was already in the possession of the Department. The purpose was to prepare the information for *electronic data processing*.

Alone among the Department's psychiatric social workers, appellants Belmont and Pawsey refused to obey the Department's order. They were thereafter suspended from their employment and salary for five days for "willful disobedience" under the authority of Government Code section

19572, subdivision (o). Successive reviews by the State Personnel Board (hereafter the "Board"), and the superior court on a petition for writ of mandate, upheld the Department's order of suspension.

The instant appeal is taken from the superior court's judgment denying relief.

It seems proper at this point to dispose of some preliminary considerations and to place the issues in a proper perspective.

Appellants insist that a special professional relationship exists between themselves and their "clients" entitling them to assume an adversary position toward their employer, the State of California, defending "the rights of their clients." They speak of a social worker's "code of ethics" designed to "protect those clients who come into professional contact with the social worker," to which they owe a higher duty of obedience than to their employer. And they argue that the Department's order tends to "seriously undercut the relationship between the patient and the psychiatric social worker," a relationship which they strongly suggest is covered by the psychotherapist-patient privilege against nondisclosure, created by Evidence Code section 1014.

There can, of course, be no reasonable objection to appellants' election to describe the persons with whom they work as their "clients." But, nevertheless, the term neither connotes nor confirms the special legal relationship suggested by appellants. More appropriately, the handicapped persons are "clients" of the state and its Department of Social Welfare acting through its employees, psychiatric and other social workers. A commonly accepted definition of the term is "a person served by or utilizing the services of a social agency or a public institution." (Webster's New Internat. Dict. (3d ed.).)

Reference to Evidence Code sections 1010-1014 readily discloses that appellants are in no way endowed with the "privilege to refuse to disclose, and to prevent another [party] from disclosing, a confidential communication between patient and psychotherapist."

And as we shall now point out assuming, arguendo, a conflict between appellants' allegiance to a code of ethics and their duties as employees of the state, they are legally bound to fulfill the duties of their employment, or suffer disciplinary action.

A frequently repeated truism of our law is that "activities [of public] employees may not be allowed to disrupt or impair the public service. . . ." (*Board of Education* v. *Swan*, 41 Cal.2d 546, 556 [261 P.2d 261]

[cert. den. 347 U.S. 937 (98 L.Ed. 1087, 74 S.Ct. 627)], overruled on unrelated point, *Bekiaris* v. *Board of Education,* 6 Cal.3d 575, 587, fn. 7 [100 Cal.Rptr. 16, 493 P.2d 480]; *Morrison* v. *State Board of Education,* 1 Cal.3d 214, 222 [82 Cal.Rptr. 175, 461 P.2d 375]; *Blake* v. *State Personnel Board,* 25 Cal.App.3d 541, 552 [102 Cal.Rptr. 50].) It is therefore essential to the public service that its employees obey all *lawful orders* given them in the course of their employment. (See Gov. Code, § 19572, subd. (o); *Board of Education* v. *Swan, supra,* p. 556; *Hingsbergen* v. *State Personnel Bd.,* 240 Cal.App.2d 914, 920-922 [50 Cal.Rptr. 59].) Of course, a public employee may not himself, in "good faith" and without penalty, determine whether such a lawful order shall be obeyed, for nothing would seem better calculated to "disrupt and impair the public service." And when " 'an employee of the state, under civil service, accepts a position, he does so with knowledge of the fact that . . . his conduct [is] subject to the law . . . .' " (*Gilmore* v. *Personnel Board,* 161 Cal.App.2d 439, 449 [326 P.2d 874].)

So without further consideration of any assumed special "client" relationship, or statutory privilege, or higher duty of allegiance to a "code of ethics," we enter upon our inquiry. The basic question before us, as it was before the Department, the Board, and then the superior court, is simply whether the Department's order to its psychiatric social workers was a *lawful order.*

In 1965 the Legislature created the "Department of Social Welfare" to be managed by a "Director" who was given broad power, among other things, to formulate and adopt policies, regulations, orders and standards implementing the "public social service" statutes of California. (See Welf. & Inst. Code, §§ 10550-10554.) The order here under dispute was promulgated by the Director pursuant to that authority.

Appellants appear to concede that the subject information of this case was properly in the possession of the Department, and could properly be used by "authorized persons" including such persons in the related county and federal welfare agencies.

Instead, they state: "[T]he issue is whether the collection and storage of data by government in a *computerized data bank is* [*on the facts of this case*], an invasion of the privacy of the persons whom the data concerns." (Italics added.) They argue that the Department's order requiring them to participate in such an invasion of privacy contrary to the Fourth Amendment, is unlawful and therefore need not be obeyed.

Principal reliance is placed by appellants on the case of *Parrish* v. *Civil*

*Service Commission,* 66 Cal.2d 260 [57 Cal.Rptr. 623, 425 P.2d 223]. But there a social worker was held to have been wrongfully penalized for refusing to participate in an *unlawful activity,* an early morning "bed check" of the homes of welfare recipients, in clear violation of the Fourth Amendment. *Parrish* v. *Civil Service Commission* is authority for the proposition that a state employee may properly refuse to obey an *unlawful order,* a point which is here wholly undisputed.

We proceed with our analysis whether the Department's order, here at issue, was a lawful order required to be obeyed by its employees.

The "facts" of this case upon which appellants rely in their defense of "constitutional unlawfulness" of the Department's order are, for the purpose of this appeal, disclosed by their "offer of proof" which was rejected by the Board. The Board ruled, as did the superior court, that considered as true the offer of proof stated no defense to the Department's charge of willful disobedience.

The somewhat extensive offer of proof may reasonably be broken down into four divisions.

It is first asserted that the subject welfare recipients were not asked for permission to use the pertinent information, or told that they need not supply it, or advised that it would be fed into the computer system. It is conceded that no "directly applicable" authority is to be found supporting appellants' claim that obtaining, storing, and using the information under these circumstances is unlawful. The persons with whom appellants work are, as indicated, receiving welfare aid from the state. The data was obviously sought by the Department from its psychiatric social workers pursuant to its duty to administer such aid efficiently and effectively. There could be no reasonable objection to its use by the Department and related county and federal welfare agencies with, or without, the consent or knowledge of the welfare recipients. This proffered evidence would establish neither unlawfulness nor constitutional impropriety in the Department's order.

Appellants also offered to prove that computer storage of the data, or some of it, by the Department was "unnecessary." Such a determination is best left to the agency charged by law with making it. But in any event, we observe no reason why the Department is legally or constitutionally restricted to the use of such information as is *necessary* to its functioning; some *relevancy* to the agency's administrative functions would reasonably be sufficient.

The third area of appellants' offer of proof may be summarized

as follows: (1) inadequate steps are taken to ensure privacy of the data; (2) persons with access to the data are not known with "certainty"; (3) some "authorized" persons have "little or no use for such sensitive information," while (4) others "have access to more information than necessary"; (5) more security could be had "with the expenditure of relatively little time, money, and effort"; and (6) "The Department either did not consider or rejected several very practical and relatively inexpensive methods of improving the security" of the data processing system.

Many of these complaints concern administrative decisions, the responsibility for which is placed by statute in the Director of the Department. To the extent that they relate to the right of privacy of the welfare recipients, that right was and is the concern of Welfare and Institutions Code section 10850.

Section 10850, as in effect at the time with which we are concerned, provided in part as follows: "[A]ll applications and records concerning any individual made or kept by any public officer or agency in connection with the administration of any provision of this code relating to any form of public social services for which grants-in-aid are received by this state from the United States government shall be confidential, and shall not be open to examination for any purpose not directly connected with the administration of such public social service; . . .

"[N]o person shall publish or disclose or permit or cause to be published or disclosed any list of persons receiving public social services. Except for purposes directly connected with the administration of public social services, no person shall publish, disclose, or use or permit or cause to be published, disclosed, or used any confidential information pertaining to an applicant or recipient. Any violation of this paragraph is a misdemeanor.

"The department may make rules and regulations governing the custody, use and preservation of all records, papers, files and communications pertaining to the administration of the laws relating to public social services. The rules and regulations shall be binding on all departments, officials and employees of the state, or of any political subdivision of the state and may provide for giving information to or exchanging information with agencies, public or private, which are engaged in planning, providing or securing social services for or in behalf of recipients or applicants; and for making case records available for research purposes, provided, that such research will not result in the disclosure of the identity of applicants for or recipients of public social services.

"Any person, including every public officer and employee, who knowingly secures or possesses, other than in the course of official duty, an official list or a list compiled from official sources, published or disclosed in violation of this section, of persons who have applied for or who have been granted any form of public social services for which state or federal funds are made available to the counties is guilty of a misdemeanor."

We are of the opinion that Welfare and Institutions Code section 10850 (since 1969 amended in substantially similar form), imposing criminal sanctions for its breach, adequately protected the right of privacy of the welfare recipients served by the state's psychiatric social workers. No constitutional breach by the Department of that right was established by this segment of the offer of proof.

We observe that the sanctions of section 10850 are equally operative with respect to county welfare agencies and also, that a similar statute safeguards the security of such information in the hands of the Department of Health, Education and Welfare. (See 42 U.S.C. § 1306.)

■ The fourth and remaining assertion of the offer of proof is that: "Once the information concerning appellants' clients has been supplied to the Department's [electronic data processing] system, appellants have no control over its dissemination or distribution."

It does not appear, nor do appellants even contend, that "control" over the Department's records is any part of the duties of psychiatric social workers. The Department is obviously free to place that responsibility elsewhere.

■ From all of the foregoing it follows that the Department's and the Legislature's purpose to make "maximum use of electronic data processing" in the handling and storage of welfare recipient information, under the facts embraced by appellants' offer of proof, flouted neither the "right of privacy" nor other Fourth Amendment principle.

Appellants having, as a matter of law, willfully refused to obey a lawful order of the Department, the judgment of the superior court will be affirmed.

Affirmed.

Molinari, P. J., and Sims, J., concurred.