George O. PARKER, Plaintiff-Appellant,

v.

John J. McKEITHEN, Governor of the State of Louisiana, et al., Defendants-Appellees.

No. 71–2499.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1974.

Rehearing Denied Feb. 15, 1974.

David L. Morgan, Jr., New Orleans, La., for plaintiff-appellant.

Jack P. F. Gremillion, Atty. Gen., Stanford O. Bardwell, Jr., Baton Rouge, La., for defendants-appellees.

Paul P. Rutledge, New Orleans, La., for Hartford Accident & Ind. Co.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

George O. Parker, the plaintiff below appeals from the entry of what was styled below as a summary judgment in favor of the appellees, McKeithen and others. Decision was withheld to await the result of other litigation and the appeal is now ripe for our decision. In our view, the order entered below amounted to a dismissal for failure to state a claim, an erroneous disposition. Since summary judgment is now a proper disposition, we vacate the original judgment below and remand for the entry of summary judgment upon new and independent grounds.

The suit by Parker was based on injuries received by him while an inmate of the Louisiana State Penitentiary at Angola, Louisiana. Named as defendants were the state and numerous Louisiana State officials ranging from Governor McKeithen to the Warden at Angola.[1] Suit for damages in excess of one million dollars was brought under the federal civil rights, Title 42 U.S.C. Secs. 1981 and 1983 et seq., with jurisdiction claimed under Title 28 U.S.C. Secs. 1331 and 1343. The complaint charged that due to the gross negligence of the prison officials acting under color of state statutes, usages and customs, Parker was deprived of his Eighth Amendment right to be free from cruel and unusual punishment[2] and his Fourteenth Amendment right to equal protection of the laws.

The underlying facts are as follows.[3] On September 15, 1969, the date of his injury, Parker was a medium security inmate in Camp H. of the Louisiana State Penitentiary at Angola. Counting time allowed for good behavior, Parker was due to be released from Angola less than a week later, September 21, 1969. On the morning of September 15th, inmate Willie Edmonson, also billeted in Camp H, made his way from the second floor of the building in which he and Parker were domiciled to Parker's bed on the first floor. Parker was asleep. Edmonson stabbed Parker in the abdomen several times with a homemade knife, inflicting serious injuries. Par-

---

1. The named defendants were: John J. McKeithen, Governor of the State of Louisiana; C. C. Aycock, Lt. Governor of the State of Louisiana, and President Pro Tempore of the Louisiana Senate; John S. Garrett, Speaker of the Louisiana House of Representatives; the State of Louisiana, through the State Board and/or Department of Corrections; Louis M. Sowers, Director of the Louisiana Department of Corrections; C. Murray Henderson, Warden of the Louisiana State Penitentiary at Angola, Louisiana; Lloyd W. Hoyle, Assistant Warden of the Louisiana State Penitentiary at Angola; Hayden J. Dees, Deputy Warden of the Louisiana State Penitentiary at Angola; The Hartford Accident and Indemnity Insurance Company, insurer of Louis M. Sowers, Hayden J. Dees, and Lloyd W. Hoyle; and Fireman's Fund Insurance Company, insurer of C. Murray Henderson and Willie Edmonson (the inmate who physically attacked Parker causing the injuries of which he here complains).

2. Made expressly applicable to the states through the Due Process Clause of the Fourteenth Amendment by Robinson v. California, 1962, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 which cited dictum from an earlier Supreme Court case originating in the courts of Louisiana, State of Louisiana ex rel. Francis v. Resweber, 1947, 329 U.S. 459, 463, 67 S.Ct. 374, 376, 91 L.Ed. 422, 426.

3. The district court's opinion and the appellate briefs contain only sparse factual recitals. For this reason we have relied in part upon the Stipulation of Facts cited by the Louisiana Court of Appeal in Parker v. State, La.App.1972, 261 So.2d 364, 366–367, aff'd, La.1973, 282 So.2d 483, cert. denied, —— U.S. ——, 94 S.Ct. 724, 38 L.Ed.2d 550 [No. 73–597, 42 U.S.L.W. 3352, Dec. 10, 1973], a suit arising out of the same injury as the instant suit filed in the state district court on July 20, 1970, some two months prior to the filing of suit in the court below.

ker was hospitalized at the Earl K. Long Hospital at Baton Rouge for two months.

The original complaint below alleged that Parker's stabbing by Edmonson was the result of gross negligence on the part of prison officials in that: (1) the officials were aware that inmates at Angola—and Edmonson in particular—made and were regularly in possession of various types of weapons, including knives similar to the one used by Edmonson on Parker, but failed to conduct inspections therefor and failed to maintain protective safeguards to prevent their manufacture; (2) prison officials were aware that Edmonson was a violent person with a record of prior attacks on fellow inmates; (3) prison officials were aware that Edmonson had made specific threats against Parker shortly before the date of the attack; and (4) prison officials had refused to isolate Parker from Edmonson and other inmates but permitted him to remain in an open type dormitory.

Defendants moved for summary judgment alleging that Parker had not presented a substantial federal claim and pointing out that he had filed a suit identical in all respects save the allegations of violations of federal law in Louisiana state court. Following a hearing on the motion, summary judgment was granted as to all defendants, written reasons therefor being assigned by opinion-order.

The district court granted summary judgment in favor of the Governor, McKeithen, C. C. Aycock, President Pro Tempore of the state senate and Lieutenant Governor, and John S. Garrett, Speaker of the House of Representatives on the ground of their immunity from suit for acts or omissions done within the sphere of legitimate executive or legislative activities.[4] As to the Warden, Henderson, the Assistant Warden, Hoyle, and the Deputy Warden, Dees, the district judge asserted that, although since Monroe v. Pape, 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, courts have differed as to whether unintentional negligent conduct under color of state law will support a claim under Sec. 1983, he followed the view that under exceptional circumstances, unintentional conduct by prison officials may support such a claim. However, he continued, Parker had failed to state such a claim because he alleged only "an isolated incident of negligent failure to protect." Additionally, he considered himself bound by a federal "hands off" policy explicated in numerous cited cases,[5] of refusing to review matters of prison administration, "including the discipline, treatment and care of those confined" unless "exercised in such a manner as to constitute clear abuse or caprice upon the part of prison officials", citing Williams v. Field, 9 Cir. 1969, 416 F.2d 483, cert. denied, 1970, 397 U.S. 1016, 90 S.Ct. 1252, 25 L.Ed.2d 431. He found nothing in the record to indicate bad faith or oppressive motive on the part of the defendant prison officials in failing to protect Parker, and hence no violation of Eighth or Fourteenth Amendment rights.

Our review starts with noting that we are not bound by the label which the district court attached to its action. Tuley v. Heyd, 5 Cir. 1973, 482 F.2d 590. As in that case, the district court here erroneously labeled as a summary judgment what was in fact a dismissal, either for failure to state a claim upon which relief could be granted, F.R.Civ.P. Rule 12(b)(6), or alternatively for rea-

4. Citing the following cases: Tenney v. Brandhove, 1951, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Martone v. McKeithen, 5 Cir. 1969, 413 F.2d 1373, and Parine v. Levine, E.D.Mich.1967, 274 F.Supp. 268.

5. Cooper v. Pate, 378 U.S. 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); Hughes v. Noble, 295 F.2d 495 (CA 5–1961); Stiltner v. Rhay, 371 F.2d 420 (CA 9–1967); Snow v. Gladden, 338 F.2d 999 (CA 9–1964); Schack v. State of Florida, 391 F.2d 593 (CA 5–1968); Granville v. Hunt, 411 F.2d 9 (CA 5–1969); Hess v. Blackwell, 409 F.2d 362 (CA 5–1969); Willis v. White, 310 F.Supp. 205 (ED La. 1970).

sons apparently based on principles of federal-state comity. We treat the district court's order as a dismissal in our analysis.

■ We consider first the district court's ruling that failure to allege "more than an isolated incident of negligent failure to protect" provided grounds for dismissal under F.R.Civ.P. Rule 12(b)(6). The district court cited no authority for such a test of the sufficiency of a complaint under Sec. 1983, and we know of none. Indeed, there are several cases from this Circuit in which claims under Sec. 1983, álleging violation of Eighth Amendment rights arising from negligence of state officials have been recognized.[6] We hold that a dismissal in the instant case for failure to state a claim under Sec. 1983 was in error, and the judgment of the district court based on those grounds must be vacated.

■■ We next consider the correctness of the district court's action in dismissing the suit on the further basis that federal courts prefer to abstain on grounds of comity from reaching the merits of a challenge to the acts of state prison officials. While it is true that federal courts are usually reluctant to interfere in matters of prison administration, Sostre v. McGinnis, 2 Cir. 1971, 442 F.2d 178, 191, cert. denied, 404 U.S. 1049, 92 S.Ct. 719, 30 L.Ed.2d 740, cert. denied, Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254, it can no longer be correctly asserted that the federal courts are unwilling in all situations to review the actions of state prison administrators to determine the existence of possible violations of constitutional rights. Anderson v. Nosser, supra, Roberts v. Williams, supra, Whirl v. Kern, supra. For this reason we disapprove also the action of the district court to the extent that it can be considered a dismissal on abstention grounds.

In trying to determine what disposition is now to be made of this appeal, we note first that the plaintiff-appellant has sought and received a final adjudication of the question of negligence on the part of prison officials in a separate suit maintained in the courts of the State of Louisiana, Parker v. State, 1971, 19th Judicial District Court (June 29, 1972, Nos. 143, 418) aff'd, 1972 La. App., 261 So.2d 364, aff'd 1973, La., 282 So.2d 483, on rehearing, La.1973, 282

---

6. Roberts v. Williams, 5 Cir. 1971, 456 F.2d 819, Whirl v. Kern, 5 Cir. 1969, 407 F.2d 781. On the question of negligent deprivation of Eighth Amendment rights, compare the majority position in *Roberts*, supra, with this writer's special concurrence in that same opinion. With adequate pendent Mississippi tort jurisdiction, I thought it was unnecessary to decide the Eighth Amendment question, as Judge Nichols did for the majority. See further the panel opinion in Anderson v. Nosser, 5 Cir. 1971, 438 F.2d 183 and the opinion, on rehearing en banc, 5 Cir. 1972, 456 F.2d 835; cert. denied 1973, sub nom. Nosser v. Bradley, 1972, 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89. The charges as to the Mississippi prison officials involved in *Nosser* were as to intentional, not negligent acts, but the opinion is significant as reflecting the views of all the then active judges of this circuit as to relief upon Eighth Amendment grounds for mistreatment by prison officials. *Nosser* dealt with alleged 'inhuman treatment accorded civil rights demonstrators arrested in Natchez, Mississippi and transferred to Parchman Penitentiary under a state statute because of overcrowded conditions in the Natchez

jail. The panel opinion found that the prison treatment of these arrestees violated the cruel and inhuman punishment provisions of the Eighth Amendment. While Judge Bell's en banc opinion for the majority "pretermitted the question of Eighth Amendment violation" and based its decision on Fourteenth Amendment due process grounds, seven other active judges of the court joined this writer's special concurrence, 456 F.2d at p. 842, making a total of eight active judges, in asserting that "I would decide forthrightly that no violation of Eighth Amendment rights warranting the direction of a verdict as to liability was made out below, and definitely disapprove the panel decision to this effect," with a footnote citation to my special concurrence in Roberts v. Williams, supra. If this position may be taken as approved by a majority of active judges of this court, a claim alleging as here a violation of Eighth Amendment rights resulting from the gross negligence of state prison officials would have at least colorable validity (as the legal equivalent of intentional acts) in considering the propriety of the dismissal below in the instant case.

So.2d 488, cert. denied —— U.S. ——, 94 S.Ct. 724, 38 L.Ed.2d 550 [No. 73–597, 42 U.S.L.W. 3552, Dec. 10, 1973], filed 42 U.S.L.W. 3227 (No. 73–597, Oct. 4, 1973). In the state courts the decision was against the plaintiff on the question of negligence. The trial court applied the test earlier established in St. Julian v. State, La.App.1957, 98 So.2d 284, 285, for determining whether prison officials have been negligent in allowing prison inmates to inflict harm upon one another:

> The general rule gathered from the cases is that in order to hold the State or the employees of a state who have charge of a prison liable for injury to one inmate inflicted by another inmate, there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, and following that, there must be showing of negligence on the part of these officials in failing to prevent the injury. (Citing cases).

The state trial court found insufficient the plaintiff's evidence that prison officials knew or should have known that Parker was to be stabbed by Edmonson and dismissed plaintiff's suit.

On appeal, the Louisiana Court of Appeals affirmed the trial court. The court of appeals recognized that prison officials had been informed of the threats made by Edmonson against Parker, but noted that such threats were commonplace in the compound in which Parker was an inmate. The court felt compelled to draw a distinction between mere knowledge of the existence of threats and the existence of actual danger of execution of the threat. The court of appeals found that the trial court had not erroneously concluded that Edmonson's threat against Parker was properly treated by prison officials as little more than an idle threat by a temporarily jealous prisoner with homosexual tendencies against a male paramour with like proclivities. Parker was himself known to have violent tendencies since he was serving a prison term for manslaughter in the fatal stabbing of a male paramour. The population of Camp H was composed of similar prisoners and was constantly a source of petty quarrels, jealousies, bickerings and threats of various kinds. The court mentioned other grounds for upholding the decision of the trial court, inter alia, the fact that, upon being apprised of Edmonson's threats, two prison officers made shakedown searches of Edmonson and his bunk area to determine whether Edmonson was in possession of any weapons.

The Louisiana Supreme Court affirmed the decisions below, again citing the test established in St. Julian v. State, supra, as controlling. The Supreme Court found that the prison officials had taken reasonable measures, including the search of Edmonson and the counselling of both prisoners, to prevent harm to Parker. On rehearing, the Louisiana Supreme Court adhered to its original opinion. 282 So.2d 488.

We must consider, then, the effect, if any, which the litigation of the issue of negligence in the state courts of Louisiana is to have upon the determination of the plaintiff-appellant's negligence-based Sec. 1983 suit in the federal courts. As this court noted in Hyman v. Regenstein, 5 Cir. 1958, 258 F.2d 502, 510, cert. denied sub nom., Hyman v. Continental Illinois National Bank, 1959, 359 U.S. 913, 79 S.Ct. 589, 3 L.Ed.2d 575: "It, of course, is well settled law that a fact decided in an earlier suit is conclusively established between the parties and their privies, provided it was necessary to the result in the first suit." This is merely a statement of the doctrine of collateral estoppel by judgment more fully enunciated by our citation, in Hyman v. Regenstein, supra, to American Jurisprudence, Judgments, Section 371:

> " 'It is a fundamental principle of jurisprudence that material facts or questions which were in issue in a former action, and were there admitted or judicially determined, are conclusively settled by a judgment rendered therein, and that such facts or questions become res judicata and may not again be litigated in a subse-

quent action between the same parties or their privies, regardless of the form the issues may take in the subsequent action, whether the subsequent action involves the same or a different form of proceeding, or whether the second action is upon the same or a different cause of action, subject matter, claim, or demand, as the earlier action. *In such cases, it is also immaterial that the two actions are based on different grounds, or tried on different theories, or instituted for different purposes, and seek different relief. * * *'"*[7] (Emphasis supplied)

We noted further in *Hyman, supra,* the potential dangers inherent in the doctrine of collateral estoppel, e. g., its "loose" application "to subsequent litigation having such a tenuous connection with the original controversy that application of the doctrine would work an injustice." 258 F.2d at 510. Thus we stated a limitation on the applicability of the doctrine:

> "collateral estoppel by judgment is applicable only when it is evident from the pleadings and record that determination of the fact in question was necessary to the final judgment and it was foreseeable that the fact would be of importance in possible future litigation." Id. at 511.

Applying the doctrine of collateral estoppel to the situation in the instant case, with due regard for its limitations, we think it is clear that determination of the question of negligence was the fundamental issue in the state court litigation. Aside from the question of damages, it was the only issue in the state courts. Determination of the issue of negligence was necessary to the judgment in the state court proceedings.

The state district court concluded that Parker had introduced insufficient evidence to show fore-knowledge on the part of prison officials that Parker was to be attacked by Edmonson. Under the test established in St. Julian v. State, supra, a showing of knowledge was the necessary prerequisite to proof of negligence. Thus, failure to prove knowledge is fatal to proof of negligence. Where does this determination leave Parker's federal claim based on Sections 1981 and 1983?

■ In his complaint below, Parker alleged:

> . . . that the overall circumstances as herein alleged constitute gross negligence on the part of the State of Louisiana, its officials, the defendants, and all those persons associated with said prison and said persons are responsible unto petitioner for any and all injuries sustained

---

7. In applying the doctrine of collateral estoppel by judgment in this case, we are not unmindful of the unsettled nature of the law regarding the respect to be accorded state court rulings in subsequent federal court proceedings. See Vestal, Res Judicata/Preclusion by Judgment: The Law Applied in Federal Courts, 66 Mich.L.Rev. 1723, 1734, nl 45 and accompanying text. In particular, there appears to exist some difference of opinion whether state court decisions are to be accorded force in the federal courts under the doctrine of collateral estoppel by judgment or under the provisions of Title 28 U.S.C. Section 1738, an expansion of the "Full Faith and Credit" provision of Article IV of the United States Constitution. Section 1738 states:

Such Acts, records and judicial proceedings or copies thereof (referring to the States), so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Pos-

sessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

We intimate no opinion as to the relative merits of one ground over the other, but rely on the doctrine of collateral estoppel because prior precedent in this circuit approves the doctrine. Hyman v. Regenstein, supra, text.

At the same time we note the existence of a distinction between the factual situation in the instant case and that in Hyman v. Regenstein. *Hyman* concerns the effect to be given the decision of a Colorado state court by a Florida federal district court. We are concerned here with the effect to be accorded by a federal district court sitting in Louisiana to decisions of the courts of the State of Louisiana. No reason or rule of policy exists to our knowledge why the rule applied in *Regenstein* to out-of-state judgments should not apply with equal force to in-state judgments, and we proceed upon that basis.

while he was assigned and confined to said prison . . .

This quote manifests that Parker's civil rights violation claim is premised upon his allegation that the defendants were grossly negligent in failing to protect him from being stabbed by Edmonson. If the defendants were not negligent, Parker's Section 1981–1983 claims fail. It is at this juncture that the doctrine of collateral estoppel by judgment assumes control. The factual question of negligence was fully presented to the state courts, and Parker failed to introduce even sufficient evidence to prove the threshold element of knowledge, much less prove that the defendants were negligent. The state court thereupon dismissed Parker's suit with prejudice. We hold that the doctrine of collateral estoppel by judgment operates to prevent Parker from relitigating the issues of negligence in the federal courts. Hyman v. Regenstein, supra. The final decision of the courts of the State of Louisiana that the defendants did not have the fore-knowledge essential to a finding of their negligence estops Parker from litigating the question of negligence as a prerequisite to recovery on his suit under Title Section 1981 and 1983 of Title 42 U.S.C.

Having treated the order of the district court as a dismissal rather than as a granting of summary judgment for the defendants, we vacate that order, and remand to the district court with directions that summary judgment be entered for the defendants[8] on the grounds that the plaintiff is collaterally estopped by the judgment in his suit in state court from raising the essential issue of negligence in the court below.

Vacated and remanded with directions.

8. We do not review the decision below as to the executive and legislative immunity of the Governor, President Pro Tempore of the Senate and Lieutenant Governor, and Speaker of the House of Representatives, we vacate the judgment below in its entirety. The appellant's brief does not address itself specifically to the question of executive immunity. It speaks rather in terms of negligence and of the governor's responsibility for the acts of prison officials, and argues that the granting of summary judgment motions as to all defendants was improper because the question of negligence remained to be determined.

The appellees' brief, page 12, notes the lack of clarity in appellants' brief, and says, assuming arguendo that the appellant is continuing to assert the liability of the governor and the members of the Louisiana legislative bodies for the harm he suffered, that the appellant must fail on the basis of the doctrines of executive and legislative immunity.

We need not enter this thicket, inasmuch as summary judgment is directed to be entered for all defendants under our mandate.

The question of the State of Louisiana's being amenable to suit we likewise leave unanswered in these proceedings. In the state court suit appellant Parker cited House Concurrent Resolution No. 215 (17) and (19) of the Regular Session of the 1970 Louisiana Legislature as authorizing that action. Whether that legislative waiver of sovereign immunity is broad enough to permit this federal action to include the State of Louisiana as a defendant is not argued before us by either brief. Once again, we see no need to undertake this perhaps interesting but wholly unnecessary determination. The summary judgment to be entered below is directed to be as to the entire cause of action asserted against any and all defendants.