[Civ. No. 18683. Fourth Dist., Div. One. Jan. 11, 1980.]

MARGARET A. HASKINS et al.,
Plaintiffs and Appellants, v.
SAN DIEGO COUNTY DEPARTMENT OF PUBLIC
WELFARE et al.,
Defendants and Respondents.

COUNSEL

Schulman & Schulman and Elizabeth Schulman for Plaintiffs and Appellants.

Donald L. Clark, County Counsel, and Robert C. Rice, Deputy County Counsel, for Defendants and Respondents.

OPINION

**STANIFORTH, J.**—James Dorse Haskins (James) and his wife, Margaret Haskins, (Margaret) sued James' former wife, Esther Haskins (Esther), the San Diego County Department of Public Welfare (DPW), its director, Homer Detrich, and the County of San Diego (collectively the County) for money damages on a variety of legal theories. James and Margaret (the Haskinses) say Esther—when the estranged wife of James—misused her position as an employee of the DPW to obtain confidential records of welfare recipient Margaret and caused a welfare fraud investigation to be initiated based upon her complaint that Margaret was living with an "unattached male," to wit, James. The investigation resulted in "no formal charges being filed" against Margaret. The Haskinses assert this *investigation* caused them humiliation,

suffering, public contempt, obloquy, ridicule and other damages to be proven if given their day in court.

## THE PLEADINGS

Counts one through four (incl.) charge Esther with (1) invasion of privacy, (2) libel, (3) slander, and (4) intentional infliction of mental distress. Esther's demurrer to these four counts was sustained with leave to amend. Since no appeal lies from this ruling, these latter counts are not before this court.

Counts five and six charge the County with liability based upon negligence in permitting its employee Esther to gain access to Margaret's welfare files in violation of a mandatory duty imposed on the County and its employees to maintain welfare records confidential. (Welf. & Inst. Code, § 10850.)[1] The seventh cause of action seeks to state a cause of action against the County for violation of the Haskinses' civil rights under 42 United States Code Annotated section 1983. The eighth cause of action charges the County with a conspiracy to discriminate against, deprive the Haskinses of "rights, privileges and immunities" secured by the United States Constitution—done under color of law. The trial court found no mandatory duty on the part of the County to insure confidentiality of the welfare recipient's record and no factual allegation of an unconstitutional policy and therefore sustained the County's demurrer to counts six through eight inclusive without leave to amend. The Haskinses appeal the ensuing judgment of dismissal.

## DISCUSSION

### I

A demurrer to a complaint is properly sustained if the complaint does not state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10.) However, it is an abuse of discretion to sustain a de-

---

[1]Paragraph 35 (fifth cause of action) alleges: "...ESTHER HASKINS was able to wrongfully, and for her own personal purpose and profit, misuse and abuse her status as an employee of the DPW in that she used her knowledge of the procedures applicable in determining if a particular persona [sic] was a welfare recipient to learn that plaintiff MARGARET A. HASKINS was such a welfare recipient. Furthermore, in the ordinary and regular course of her duties as an employee of the DPW, defendant ESTHER HASKINS was not charged with or responsible for seeking out such information concerning MARGARET A. HASKINS."

murrer without leave to amend if there is any reasonable possibility that the defect can be cured by amendment. (*Temescal Water Co.* v. *Dept. Public Works*, 44 Cal.2d 90, 107 [280 P.2d 1].) Leave to amend is properly denied if the facts and nature of plaintiff's claim are clear and under the substantive law, no liability exists (*Routh* v. *Quinn*, 20 Cal.2d 488, 492-493 [127 P.2d 1, 149 A.L.R. 215]) or where it is probable from the nature of the defects and previous unsuccessful attempts to plead that the plaintiffs cannot state a cause of action (*Goodman* v. *Kennedy*, 18 Cal.3d 335, 349-350 [134 Cal.Rptr. 375, 556 P.2d 737]).

The burden is on the Haskinses to demonstrate the trial court abused its discretion. (*Filice* v. *Boccardo*, 210 Cal.App.2d 843, 847 [26 Cal. Rptr. 789].)

## II

The propriety of the trial court's sustaining the demurrer without leave to amend as to counts five and six rests in the first place upon the soundness of its finding of "no mandatory duty on County to insure confidentiality; no strict liability." At the outset, we note this general rule of nonliability of a sovereign body for tortious acts.

"A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815, subd. (a).) There is no "common law" imposition of tort liabilities on governmental entities in California. (*Datil* v. *City of Los Angeles*, 263 Cal.App.2d 655, 660 [69 Cal.Rptr. 788].) Any such liability is dependent wholly on statute. (*Susman* v. *City of Los Angeles*, 269 Cal.App.2d 803, 808 [75 Cal.Rptr. 240].) Thus, tort liability may be imposed "[w]here a public entity is under a *mandatory* duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it *exercised reasonable diligence* to discharge the duty." (Gov. Code, § 815.6; italics added.)

The Haskinses plead, point to Welfare and Institutions Code section 10850 as the precise source of such a mandatory duty. Section 10850 provided in pertinent part:[2] "Except as otherwise provided in this sec-

---

[2]Amended by Statutes 1978, chapter 246, section 1, effective January 1, 1979.

tion, *all applications and records* concerning any individual made or kept by any public officer or agency in connection with the administration of any provision of this code relating to any form of public social services for which grants-in-aid are received by this state from the United States government *shall be confidential*, and *shall not be open to examination for any purpose not directly connected with the administration of such program*, or any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such program. The disclosure of any information which identifies by name or address any applicant for or recipient of such grants-in-aid to any committee or Legislature is prohibited.

"*Except as otherwise provided in this section, no person shall publish or disclose or permit or cause to be published or disclosed any list of persons receiving public social services.* Any county welfare department in this state may release lists of applicants for, or recipients of, public social services, to any other county welfare department or the Department of Benefit Payments or the State Department of Health, and such lists or any other records shall be released when requested by any county welfare department or the Department of Benefit Payments or the State Department of Health. Such lists or other records shall only be used for purposes directly connected with the administration of public social services. Except for such purposes, no person shall publish, disclose, or use or permit or cause to be published, disclosed, or used any confidential information pertaining to an applicant or recipient. However, this section shall not prohibit the furnishing of such information to other public agencies to the extent required for verifying eligibility or for other purposes directly connected with the administration of public social services. Any person knowingly and intentionally violating the provisions of this paragraph is guilty of a misdemeanor." (Italics added.)

This section prohibits use, publication or disclosure of certain confidential information pertaining to applicants or recipients of public services.

■ Section 10850 provides that three types of information are confidential. The first category applies to "all applications and records concerning any individual made or kept by any public officer...in connection with the administration of...any form of public social services." The second category of confidential information prohibits the "disclosure of any information which identifies by name or address any

applicant for or recipient of [any form of public social services] to any committee or legislative body." The third category of confidential matter includes "any list of persons receiving public social services." The foregoing confidentiality requirements were first enacted in the predecessor section to Welfare and Institutions Code section 10850 (§ 118) in 1941 in order to conform with federal statute and rule requirements where federal funding was involved in public social service programs.

The current federal requirements are expressed in title 42 United States Code Annotated section 602 (subch. IV) which provides in pertinent part: "(a) A State plan for aid and services to needy families with children must...(9) provide safeguards which restrict the use of [fn. omitted] disclosure of information concerning applicants or recipients to purposes directly connected with (A) the administration of the plan of the State approved under this part, the plan or program of the State under part B, C, or D of this subchapter or under subchapter I, X, XIV, XVI, XIX, or XX of this chapter, or the supplemental security income program established by subchapter XVI of this chapter, (B) any investigation, prosecution, or criminal or civil proceeding, conducted in connection with the administration of any such plan or program, and (C) the administration of any other Federal or federally assisted program which provides assistance, in cash or in kind, or services, directly to individuals on the basis of need; and the safeguards so provided shall prohibit disclosure, to any committee or a legislative body, of any information which identifies by name or address any such applicant or recipient;..."

In *Rosado* v. *Wyman* (397 U.S. 397, 427 [25 L.Ed.2d 442, 464, 90 S.Ct. 1207]), Justice Douglas concurring said: "State participation in federal welfare programs is not required. States may choose not to apply for federal assistance or may join in some, but not all, of the various programs....As long as a State is receiving federal funds, however, it is under a legal requirement to comply with the federal conditions placed on the receipt of those funds;..." The California Supreme Court has recognized that when the state chooses to join a federal program the California plan must comply with the mandatory requirements established by the Social Security Act and the regulations promulgated thereunder. The director "must establish regulations not in conflict with federal law (Welf. & Inst. Code, § 10604), and must administer the state program 'to secure full compliance with the applicable provisions of state and federal laws' (Welf. & Inst. Code, § 10600)." (*County of*

*Alameda* v. *Carleson,* 5 Cal.3d 730, 739 [97 Cal.Rptr. 385, 488 P.2d 953].)

We conclude that by use of the term "must. . .provide safeguards," Congress imposed a *"mandatory"* duty within the meaning of Government Code section 815.6 upon the County "to take precautionary measures, to make provisions, to supply what is needed" for the protection against something undesirable, to wit, the disclosure or use of welfare records, including a recipient's identity except for purposes directly connected with the administration of public social services. (*Knapmiller* v. *American Insurance Company* (1978) 15 Wis. 2d 219 [112 N.W.2d 586, 588]; Websters New Internat. Dict. (3d ed.) p. 1827.)

This conclusion, however, does not ipso facto breathe life into Haskinses' counts five and six. The finding of a duty to provide safeguards to restrict disclosure or use does not define the qualitative or quantative boundaries of that duty. Clearly the duty imposed does not encompass an obligation to *insure* the inviolability of the identity of a welfare recipient but only to exercise "reasonable diligence" in performance of that duty. (Welf. & Inst. Code, § 10850.)

Moreover the privilege for confidentiality, the limitation on disclosure of records under section 10850 is a conditional one. (*In re Lynna B.*, 92 Cal.App.3d 682, 705 [155 Cal.Rptr. 256].) The section itself provides for the release of records for specified purposes. The records of an individual "shall be confidential, and shall not be open to examination for any purpose not directly connected with the administration of such program, or any investigation, prosecution, or criminal or civil proceeding conducted in connection with the administration of any such program." (Welf. & Inst. Code, § 10850.)

The second paragraph of section 10850 provides for the release of lists of applicants and recipients, and other records, to other county welfare departments or to the State Department of Social Welfare. Such lists or records shall be used only "for purposes directly connected with the administration of public social services." The next sentence provides that "[e]xcept for such purposes, *no person* shall publish, disclose, or *use* or permit or cause to be published, disclosed, or *used* any confidential information pertaining to an applicant or recipient." (Italics added.) The data in a welfare recipient's file is available to a variety of governmental agencies and their personnel. (*Belmont* v. *State Personnel Bd.,*

36 Cal.App.3d 518, 536 [111 Cal.Rptr. 607]; *In re Jeannie Q.,* 32 Cal. App.3d 288, 305 [107 Cal.Rptr. 646]; *Rivera v. Los Angeles County Civil Service Com.,* 87 Cal.App.3d 1001 [151 Cal.Rptr. 480]; *Jonon v. Superior Court,* 93 Cal.App.3d 683, 693-694 [155 Cal.Rptr. 822].) The federal statute (42 U.S.C.A. § 602 (a)(9)) and in particular the regulations implementing the statute (45 C.F.R. §§ 205.50 (a)(2)(i)(A) and 205.50 (b)) indicate a primary concern with disclosure that might result in a "commercial or political" use of the data. (*Hanson v. Rowe* (1972) 18 Ariz.App. 131 [500 P.2d 916, 920]; *State v. Smythe* (1946) 25 Wn.2d 161 [169 P.2d 706, 710].)

Thus, while the primary thrust of Welfare and Institutions Code section 10850 is to prohibit "publishing" or "disclosure" of welfare recipient's records to the *public,* the prohibition of the statute also encompasses a limitation on the internal agency use of the records. The language of the statute, "[e]xcept for such purposes, *no* person shall publish, disclose or *use*" (italics added), rules out any doubt but that the internal *publication, disclosure or use* must be directly connected with the administration of such public service. (56 Ops.Cal.Atty.Gen. 279, 281-282.)

We examine the Haskinses' counts five and six in light of this discerned legislative intent and note the allegation that Esther, a DPW employee, "wrongfully" used her position to ascertain that Margaret was a welfare recipient. Esther then is charged with making a complaint to a DPW investigator and "[a]s a result,... an investigation was undertaken by the DPW" and that "investigation resulted in no formal charges being filed...." Esther's complaint (disclosure) to the DPW investigation was that an "unattached male...was living in the home ...of Margaret." We assume from the pleadings Esther did in fact learn from an unauthorized viewing of welfare records a fact not to be improperly disclosed or used, to wit, the identity of a welfare recipient. We infer that this fact, together with the charge that Margaret was living with an unrelated male, James, was related to the DPW investigator. Thus the only "disclosure" or "use" that can be reasonably inferred from the pleading, other than its communication to the welfare fraud investigator, was to store it in her mind—cogitate on it—relate it in a cerebral exercise to other facts of which she was cognizant. There is no charge of any other species of use or disclosure made in these pleadings of such fact or facts. Thus at the core of the charge of improper use or disclosure is a communication to a fellow DPW employee, charged with the duty of investigating wrongdoing in connection with

the administration of the welfare program. Esther's use or disclosure was patently for a purpose "directly connected with the administration of [such public service]." (Welf. & Inst. Code, § 10850.) She sought to stimulate an "investigation" in connection with the administration of the welfare program. The Haskinses, in short, plead themselves into an express statutorily authorized disclosure or use.

The conclusory charges that the disclosure was "wrongful" and Esther "used the records to suit her own intent and purpose" do not add substance to the Haskinses' complaint or detract from their allegations causing these counts to self-destruct.

██ Esther's communication to a DPW member—whose duty it was to investigate welfare fraud—is not barred, expressly or impliedly from the words used in either the federal or state statutes. While such a communication, if untrue, may subject Esther to liability for slander or libel, it cannot be used as basis for charging the County with violation of the mandatory duty imposed to provide safeguards against any unauthorized disclosure of protected matters.

The Haskinses' counts five and six suffer from this further fundamental defect: their viability rests upon an unspoken and undocumented assumption that Welfare and Institutions Code section 10850 requires as "safeguards" internal security devices akin to those imposed where the data to be protected are of national security, military, state secret character. Such contention is unreasonable in light of the statutory purpose, language and nature of the data collected. The private information gathered from welfare recipients is qualitatively different from state secrets. These are not such matters that preclude the routine day-to-day examination, working with, handling by large numbers of DPW personnel. The information given by an applicant/recipient for welfare must of necessity be viewed, become knowledgable to the intake receptionist, typist, clerical, filing employees, payment authorization officers and staff, review officer and staff.

The function of the DPW staff is to work with a known "client" and that client's "records." The very nature of the public service performed requires handling and visual observation by large numbers of personnel of various grades. That the eyes of any number of employees might fall on the name of a welfare recipient—a person known to them—is inevitable. To impose a system of control limiting such viewing "use" to a special few eyes is totally unreasonable. Neither the federal nor state

statute imposes such a duty. For each of the foregoing reasons, we conclude the Haskinses state no cause of action in counts five and six for breach of duty imposed by Welfare and Institutions Code section 10850.

## III

The Haskinses contend that counts five and six state a cause of action for violation of their right to privacy guaranteed by article I, section 1 of the California Constitution which provides "all people are by nature free and independent and have inalienable rights. Among these are enjoying...*privacy*." (Italics added.) "The amendment is intended to be self-executing...[and] 'creates a legal and enforceable right of privacy for every Californian.'" (*White v. Davis,* 13 Cal.3d 757, 775 [120 Cal.Rptr. 94, 5353 P.2d 222].)

Without doubt, such a cause of action exists and rests upon constitutional authority. Such conclusion begs the question as to the sufficiency of the allegations here to give form, life to such a cause of action. The pleadings here charge no disclosure to the public but rather to a fellow DPW employee charged with the duty to investigate allegations of welfare fraud. ■ Such communication as this is not the stuff out of which a cause of action for violation of right of privacy grows. The purpose of such communication was to stimulate an investigation—a communication authorized by the language of Welfare and Institutions Code section 10850. The Haskinses offer no case, no authority making such a communication a violation of right of privacy. Again, no cause of action appears when the pleadings are examined in light of the right to privacy doctrine. We conclude counts five and six are moribund.

## IV

Count seven charges DPW and Homer Detrich with "state action" in their failure to preclude Esther's use or disclosure of contents of welfare records. These defendants, it is charged, acted "under color of custom or usage..." and "authority of their office" and thereby deprive the Haskinses of rights secured in the United States Constitution and 42 United States Code Annotated section 1983—a violation of their civil rights.

The Haskinses rely upon the United States Supreme Court decision of *Monell* v. *New York City Dept. of Social Services,* 436 U.S. 658 [56

L.Ed.2d 611, 98 S.Ct. 2018] to support this pleading. The *Monell* decision (overruling *Monroe* v. *Pape,* 365 U.S. 167 [5 L.Ed.2d 492, 81 S.Ct. 473]) declared a cause of action could be stated against a municipality under 42 United States Code Annotated section 1983 where the action alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation or decision officially adopted and promulgated by the bodies' officers.

However, *Monell* held "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." (*Monell, supra,* at p. 691 [56 L.Ed.2d at p. 636].)

Nor did the *Monell* decision determine and the United States Supreme Court has yet to decide the issue of whether section 1983 affords "a remedy for negligent deprivation of constitutional rights. . . ." (*Procunier* v. *Navarette,* 434 U.S. 555, 566, fn. 14 [55 L.Ed.2d 24, 33, 98 S.Ct. 855, 862].) The vast majority of those courts which have considered the issue hold high level officials not liable for failing to supervise, correct and control the actions of their subordinates. As one court stated: "Public officials cannot be held liable for monetary damages under 1983 purely for an alleged failure to exercise proper supervisory control over their subordinates." (*Delaney* v. *Dias* (D.Mass. 1976) 415 F.Supp. 1351, 1353, and cases cited therein; see also *Ford* v. *Byrd* (5th Cir. 1976) 544 F.2d 194; *Parker* v. *McKeithen* (5th Cir. 1974) 488 F.2d 553, cert. den. 419 U.S. 838 [42 L.Ed.2d 65, 95 S.Ct. 67]; but see *Carter* v. *Carlson* (1971) 447 F.2d 358 [144 App.D.C. 388], revd. on other grounds *sub nom.; District of Columbia* v. *Carter,* 409 U.S. 418 [34 L.Ed.2d 613, 93 S.Ct. 602].)

In *Leite* v. *City of Providence* (D.R.I. 1978) 463 F.Supp. 585, 590, the court stated: "Instead of simply a negligent failure to supervise, the supervising official must have participated in some way in the alleged constitutional deprivation or acted in such a way as to exhibit a 'deliberate indifference' to the deprivation ~of the plaintiff's constitutional rights."

Two recent United States Supreme Court decisions, although not precisely on point, substantially support the *Liete* interpretation of section 1983. (*Estelle* v. *Gamble,* 429 U.S. 97 [50 L.Ed.2d 251, 97 S.Ct. 285] established a "deliberate indifference" standard for imposition of liability under section 1983; *Rizzo* v. *Goode,* 423 U.S. 362, 371 [46

L.Ed.2d 561, 569, 96 S.Ct. 598] required "authorization and approval" before an official's liability affixes under the section.

■ The Haskinses' seventh (and eighth) cause(s) of action against the County of San Diego and its officials are based on simple negligence in supervising its employee, Esther, and in preventing her from viewing files which she was not authorized to obtain. Such allegations do not state a cause of action for violation of civil rights under section 1983. (*Bonner* v. *Coughlin* (7th Cir. 1976) 545 F.2d 565, 568; see *Paul* v. *Davis,* 424 U.S. 693, 701 [47 L.Ed.2d 405, 413, 96 S.Ct. 1155].)

V

■ Count eight suffers from this further defect. It charges a conspiracy "under color of law" to deprive the Haskinses' constitutional rights. This count sets forth only conclusory allegations. These pleadings are not supported by any underlying factual detail. The Haskinses are required to specify with particularity the overt acts allegedly committed by defendants in execution of the conspiracy. (*Hoffman* v. *Halden* (9th Cir. 1959) 268 F.2d 280, 295.) They are insufficient to state a cause of action under 42 United States Code Annotated section 1985. (*Finley* v. *Rittenhouse* (9th Cir. 1969) 416 F.2d 1186.)

Finally, both counts seven and eight rely for vitality on the legal soundness of the charges made in counts five and six. Our conclusion as to their deficiencies as a matter of law add further reason, if needed, to conclude the trial court properly sustained the demurrer to counts seven and eight without leave to amend.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.