William **THISTLETHWAITE** and Sol Lockshon, Plaintiffs,

.v.

The **CITY OF NEW YORK** et al., Defendants.

No. 73 Civ. 1495.

United States District Court, S. D. New York.

July 25, 1973.

David M. Olasov, New York City, for plaintiffs.

Norman Redlich, Corp. Counsel of City of New York, by Margaret G. Gold, New York City, for defendants.

POLLACK, District Judge.

This suit is brought pursuant to the Civil Rights Statute, 42 U.S.C. § 1983, and jurisdiction is conferred over such a suit by 28 U.S.C. §§ 1331 and 1343. The plaintiffs claim that restrictions imposed upon pamphleteering in the parks of New York City represent an abridgement of free speech and are violative of the First Amendment. The attack herein is levelled against Section 13 of the rules promulgated by the City's Department of Parks named herein as defendant.

The defendants have moved to dismiss the complaint, on the grounds that no live case or controversy exists; that principles of *res judicata* preclude this suit; and, that the complaint fails to state a claim upon which relief may be granted.

For the reasons given hereafter the complaint must be dismissed on the ground that it is barred by a former adjudication of a criminal proceeding involving a violation of the same rule by these plaintiffs resulting in a conviction for unlicensed pamphleteering in the parks.

*I. Prior Proceedings*

On or about June 27, 1970, plaintiff Thistlethwaite was arrested and charged with violation of Section 13, which provides:

No person shall hold any meeting, perform any ceremony, make an address, exhibit or distribute any sign, placard, declaration or appeal of any description in any park or park-street, except by permit from Parks, Recreation and Cultural Affairs Administration. Upon application, the Administration shall issue such permit unless:

(1) the use for which the permit is sought would substantially interfere with park use and enjoyment by the public; (2) the location selected is not suitable because of special landscaping and planting; (3) the location is not suitable because it is a specialized area including, but not limited to, a zoo, swimming pool, or skating rink; (4) the date and time requested have previously been allotted by permit. Whenever a permit is denied, alternative suitable locations and dates shall be offered to the applicant.

Plaintiff Lockshon was arrested and charged with the same violation on or about April 17, 1971. Plaintiffs were tried in a consolidated proceeding before Judge Morgan E. Lane, Criminal Court, New York County, on January 13, 1972. At trial, plaintiffs moved to dismiss the prosecution asserting that Section 13 was unconstitutional "as drafted, as applied with respect to these individuals." The Court rejected this defense and found them guilty, sentencing each to a fine of $10.00 or two days in jail. An appeal was taken to the Appellate Term, New York Supreme Court, where the issue of the purported unconstitutionality of the section and of the procedure it creates was fully briefed by plaintiffs.[1] The Appellate Term affirmed the convictions on November 17, 1972 without opinion, and leave to appeal to the New York Court of Appeals was denied December 22, 1972. Plaintiffs did not seek review by the United States Supreme Court, nor did they seek postconviction collateral relief in the nature of habeas corpus.

The civil rights complaint herein was filed April 6, 1973, and—with leave of the Court—was amended June 13, 1973. During the pendency of defendants' motion to dismiss the complaint, plaintiff Lockshon asserted a desire to make immediate distributions of literature in the parks, and a petition for preliminary relief was filed. An evidentiary hearing

---

1. A portion of the trial transcript and the brief filed on the state appeal have been made part of the record herein.

was duly held on June 13, 1973, at the conclusion of which the Court found insufficient proof of immediate, irreparable harm and of probable success on the merits and found the balance of equities favoring the defendants. Accordingly, provisional relief was denied.

■ Although the focus of the evidentiary hearing was on the request for a preliminary injunction, the parties were given an opportunity to argue the legal issues presented by defendants' motion to dismiss and some of the evidence adduced at the hearing was directed to that motion. The record of such an evidentiary hearing may be considered part of the record in ruling on the present motion to dismiss the complaint. *Cf.*, Fed.R.Civ.P. 12(d) and 65(b).

## II. Res Judicata

Defendants contend that the state judgment and proceedings operate to preclude litigation by these plaintiffs of the constitutional challenge in this civil rights suit.

■ The defense of res judicata, while contained in the list of affirmative defenses in Fed.R.Civ.P. 8(c), is not enumerated in Fed.R.Civ.P. 12(b) as a ground for pre-trial motion to dismiss. However, it is generally held that, in the interest of efficient and expeditious judicial administration, *res judicata* can be raised and considered at a pre-trial stage. Katz v. State of Connecticut, 307 F.Supp. 480 (D.Conn.1969), aff'd, 433 F.2d 878 (2d Cir. 1970); 5 Wright & Miller, Federal Practice and Procedure § 1360 (1969).

■ While it may be proper to consider the issue raised by defendants at this point, its resolution is not without difficulty. No case has been cited by either party which conclusively states whether or not a constitutional challenge to a state statute may be pursued in a federal civil rights suit after the challenge has been unsuccessfully litigated by the same party as a defense in a prior state criminal prosecution.

It appears to this Court that where, as here, persons have previously been criminally prosecuted in a state court for violation of a local park rule against pamphleteering resulting in a conviction,[2] the convicted defendants ought not to be permitted to maintain a civil rights suit seeking a declaration of constitutional invalidity and an injunction against enforcement of the questioned local rule, when they have affirmatively raised the unconstitutionality of the local rule in the criminal proceeding and pursued that challenge on appeal through the state courts.

■■ It is clear that a judgment entered by a state court of competent jurisdiction must be accorded full faith and credit by federal courts and that determinations made by a state court can, under controlling principles of *res judicata* and collateral estoppel, preclude relitigation in the federal system. American Surety Co. v. Baldwin, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231 (1932); Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *see generally*, Comment, Res Judicata: Exclusive Federal Jurisdiction and the Effect of Prior State Court Determinations, 52 Va.L.Rev. 1360 (1967). This applies even to state determinations of fact which, if binding, limit the ability to pursue federal constitutional rights in federal court. *See* Taylor v. New York City Transit Authority, 433 F.2d 665 (2d Cir. 1970); Kabelka v. City of New York, 353 F.Supp. 7 (S.D.N.Y.1973); Palma v. Powers, 295 F.Supp. 924 (N.D.Ill.1969).

---

2. The *res judicata* effect of an acquittal in a criminal prosecution in a subsequent civil suit is more difficult to delineate, due to the differences in the burden of proof associated with each type of proceeding. *See* 1B Moore, Federal Practice ¶ 0.418 (1965). The effect of criminal judgments in subsequent judicial proceedings is presently being considered by the Reporters for the Restatement of Judgments. ALI, Restatement of the Law of Judgments 2d, Tent. Draft No. 1, xv (1973).

 Even though the United States Constitution may, in the public mind, be associated with federal courts, the trustees charged with preserving and applying the federal constitution include in their number state judges as well as federal judges. *See* Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947); H. Friendly, Federal Jurisdiction: A General View 90 (1973). Accordingly, state court rulings on federal constitutional issues cannot be collaterally challenged by the parties to the state action in civil rights actions in federal district court, Bricker v. Crane, 468 F.2d 1228, 1231 (1st Cir. 1972); the federal court is without jurisdiction to hear constitutional cases already adjudicated by the state courts. Paul v. Dade County, 419 F.2d 10 (5th Cir. 1969), cert. denied, 397 U.S. 1065, 90 S.Ct. 1504, 25 L.Ed.2d 686 (1970), *noted in* 24 U. of Miami L.Rev. 835 (1970).

 Each litigant with at least a colorable constitutional challenge should be accorded his day in court; however, the civil rights statute, 42 U.S.C. § 1983, was not designed to sponsor career litigants or to allow duplicative efforts to prevail. Lackawanna Police Benevolent Association v. Balen, 446 F.2d 52 (2d Cir. 1971) (*per curiam*). Where a litigant affirmatively decides to launch his constitutional battle in a state civil suit and pursues that battle through the state court system, he has chosen to bypass the opportunity to begin a federal civil rights suit in the district court. Bricker v. Crane, 468 F.2d 1228 (1st Cir. 1972); P. I. Enterprises, Inc. v. Cataldo, 457 F.2d 1012 (1st Cir. 1972); Lackawanna Police Benevolent Association v. Balen, 446 F.2d 52 (2d Cir. 1971) (*per curiam*); Howe v. Brouse, 422 F.2d 347 (8th Cir. 1970); Deane Hill Country Club, Inc. v. City of Knoxville, 379 F.2d 321 (6th Cir. 1967). This conclusion is required in the interests of judicial husbandry, the policy of comity between federal and state courts, and the equity of protecting opposing parties —usually governmental officials—from vexatious duplicative litigation. *See also* H. Friendly, Federal Jurisdiction: A General View 101–2 (1973).

 However, an actual election of the state forum must appear on the record before the litigant is denied entry to the federal district court. For example, if a party files a civil rights suit in federal court challenging the constitutionality of a state statute and the Court abstains to permit the state courts to initially interpret the state act, the litigant may return to the federal forum to continue his attack after the state ruling is made. *See* England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

 It is clear that state criminal prosecutions can provide an appropriate forum for adjudication of claims grounded in the federal constitution. *See* Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), noted in 85 Harv.L.Rev. 301 (1971); Thoms v. Heffernan, 473 F.2d 478, 483 (2d Cir. 1973). Faced with pending—or threatened—state prosecution for violation of a state or local statute, a litigant may elect to raise his constitutional contentions in the state trial and, if a conviction is entered, to pursue his challenge on appeal in the state courts. *See* Moran v. Mitchell, 354 F.Supp. 86 (E.D.Va. 1973*); cf.*, Shuttlesworth v. City of Birmingham, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969).

Consequently, when the litigant has so elected, principles of *res judicata* or collateral estoppel, to the extent applicable to the factual setting, should limit subsequent relitigation of the constitutional claim, or the facts underlying it, in a federal civil rights suit. *See* Metros v. U. S. District Court, 441 F.2d 313, 316–318 (10th Cir. 1971); Kauffman v. Moss, 420 F.2d 1270 (3d Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed. 2d 84 (1970); Goss v. State of Illinois, 312 F.2d 257 (7th Cir. 1963); Moran v.

Mitchell, 354 F.Supp. 86 (E.D.Va.1973); Murray v. Oswald, 333 F.Supp. 490 (S. D.N.Y.1971); 1B Moore, Federal Practice ¶ 0.418 [1] (1965).

▉ Moreover, if such an election is made,[3] the litigant's proper and only entry lines into the federal court system would be on petition for a writ of certiorari to the U.S. Supreme Court, 28 U.S.C. §§ 1257, 2101; *see* Lackawanna Police Benevolent Association v. Balen, 446 F.2d 52 (2d Cir. 1971) (*per curiam*); Russell v. Monroe, 351 F.Supp. 115, 118 (W.D.N.Y.1972); or, if the litigant is in "custody," *see* Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), through a federal habeas corpus proceeding, 28 U. S.C. § 2254, in which *res judicata* would not be a bar.[4] Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

The record of this case shows that plaintiffs elected to litigate their constitutional claim in the state courts and that the issues now presented herein were—or should have been—presented to the state courts.

At the June 13 hearing, plaintiff Lockshon testified as follows:

All I know is before the trial started there was somebody from some agency, and he said, "Let's drop the whole matter," and since I had begun this I said, "No, this I think is a constitutional thing. I have a right to give out leaflets. I want to go through with this thing."

Moreover, following the adverse determination in Criminal Court, plaintiffs appealed their convictions to the Appellate Term and sought review by the New York Court of Appeals; a petition for certiorari to the U.S. Supreme Court was not filed. The appellate brief filed by plaintiffs corresponds closely to the brief filed by plaintiffs simultaneously with their complaint herein; the issues presented for decision are essentially the same.

Allowing this suit to continue would sanction the type of repetitive litigation which is contrary to the policies underlying *res judicata* and to comity between federal and state courts. Even though the state determinations were made without formal opinion, this Court finds that plaintiffs have had full and sufficient opportunity to litigate their constitutional claim.

▉ Plaintiffs argue that even if principles of *res judicata* are generally applicable to the type of situation presented herein, the judicial bar to their suit should not be imposed because the claims for relief in this suit and in the prior state proceedings are distinct. While, as a general rule, "the conclusive effect of *res judicata* is limited to the same cause of action," 1B Moore, Federal Practice ¶0.410[1] (1965), it is clear on the record of this case that plaintiffs both in the prior proceedings and in the present suit seek to render inoperative the effect of Rule 13. Repetitive litigation is not to be allowed simply because the claim bears a new garb. *See* Lacka-

---

3. If the litigant initially files a civil rights complaint in federal court challenging a state law while a state prosecution is pending against him under that law, the federal court—absent a finding of bad faith prosecution—would abstain in the interest of comity. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972); Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). If the litigant then raises his defense in an effort to avoid conviction and—following a conviction—decides not to continue his challenge through the state appellate process, a federal civil rights suit might be appropriate. *See* England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 14 L.Ed.2d 440 (1964). The problem of election facing a litigant is carefully presented by Judge Merhige in Moran v. Mitchell, 354 F.Supp. 86 (E.D.Va.1973).

4. Findings made in a post-conviction relief proceeding, however, will be binding in a subsequent civil suit. *See* Rosenberg v. Martin, 478 F.2d 520 (2d Cir. 1973); Williams v. Halperin, 360 F. Supp. 554 (S.D.N.Y.1973) (Pollack, J.).

wanna Police Benevolent Association v. Balen, 446 F.2d 52 (2d Cir. 1971) (*per curiam*). Plaintiffs additionally contend that aspects of their claim were not raised before the state court. The aspects now cited as additional are inherent in the arguments presented to the state court and, in any event, *res judicata* precludes relitigation of any aspect of the claim. Baltimore S.S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927).

Since plaintiffs elected to pursue their challenge to the constitutionality of Section 13 in the state courts, the final determination entered by the state courts precludes further consideration[5] of the challenge by this Court, and accordingly, the complaint must be dismissed.

### III. Other Contentions

 In view of the determination made herein, defendants' alternative grounds for dismissal of the complaint do not require extensive comment. Defendants contend that no live case or controversy is presented, in part, because plaintiffs are not currently subject to a pending criminal prosecution. In view of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), it is clear that pendency of a state prosecution—which is a basis for federal abstention—cannot be a prerequisite for a live grievance under 42 U.S.C. § 1983. The Court finds that an adequate case or controversy is pleaded herein. *See* Pichler v. Jennings, 347 F.Supp. 1061 (S.D.N.Y.1972) and cases discussed therein. Defendants' reliance on Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969), on this record, is misplaced.

Moreover, the complaint herein is sufficient to withstand a motion to dismiss on the grounds of failure to state a claim upon which relief may be granted.

The conclusive effect of res judicata is the ground on which the complaint should be and is dismissed, with costs.

So ordered.

---

5. The Court considered an application for preliminary relief before ruling on the motion to dismiss the complaint, finding, *inter alia*, no probability of success on the merits of the claim raised. Plaintiffs, in effect, have been accorded partial adjudication by this Court, in addition to their full day in court in the state system.